Good morning, Your Honor. May it please the Court, my name is Matreya Badami, and I have been appointed to represent the petitioner and appellant, Anthony Ramirez. Let's talk about this a second. Did you know that we batch cases by type? I have observed that in the past. Although I had forgotten it, I haven't been here in quite some time, and when I sat down and heard the beginning of the argument prior, I realized, that's right, that is how they do it. Well, listen, teaching court, we have some law students in the audience that very often when we come to courts, they're batched by type. And a good practice pointer is to find out the other lawyers and find out if you've got common issues and can maybe help each other on both sides. Okay, go ahead. I would like to reserve one moment, one minute of my time for rebuttal. In this case, Petitioner Anthony Ramirez has a combination of claims that he, we would submit, would require tolling, either through statutory tolling or equitable tolling, or a combination thereof, such that when, by the time he did file his Federal petition for relief, it was timely. In this case, as the Court knows, the petition was filed and a motion to dismiss was granted on the basis of timeliness. In Mr. Ramirez's case, prior to the beginning to run of the toll of the Federal statute, which would have begun to run on May 21, 2002, prior to that, he filed his first State collateral attack in the State of California, San Francisco habeas. And that was in April of 2002. And that petition should have tolled, statutorily tolled, the running of the Federal statute. And as the Court also is aware, Mr. Ramirez was not informed of the denial of that petition until August of 2002. So it is our position that he was entitled to statutory tolling for the period of 118 days that ran between April 4, 2002, and when he received word in August, which he received word in response to numerous requests on his part for information about the status of his habeas petition. Do you mind if we work backwards on this, for those of us who are math-challenged? Absolutely, Your Honor. How late was his petition? His petition was filed in November of 2004. So how many days, quote, late was it? It should have been the number of days. Actually, that particular number I don't have, but it's from May of 21 of 2003. So it was about a year and a half late, if neither equitable nor statutory tolling. So we start with a year and a half. Yes. And you're suggesting tolling for periods that include what things? Right. There's a combination of things. There are statutory tolling periods, one for 118 days, another later. Ultimately, they add up to 139 days of tolling statutorily. And then there is the period between January 21, 2003, and I'm sorry, the number of days again this gives me. He was attacked in January of 2003. He was attacked within state prison, and he was first hospitalized and then transferred and then kept in protective administrative segregation for several months, and he was unable to access his legal files during that time. So how many days do we have there? It was about a nine-month period, as I recall. Let's see. Between February 26 and October 1 of 2003. So it was about eight months. So if you combine the attack, admin, safe, protective custody, and the statutory tolling for about a year? Well, the thing is it's not this. Our position is that the statute doesn't actually begin to run when the government would say it began to run in 2002 because he already had a pending federal statute federal attack, I mean a state collateral attack. So but the combination, yes, is about a year and a half, all told. We're counting the days in between. I'm counting those days as elapsing when he doesn't have a pending state collateral attack and he has not yet been physically attacked. So those are passing. But we would submit that the actual federal statute didn't begin to toll until August of 2002. Do these periods overlap? They do. And that is why it's very complicated in terms of the timing, and I tried to lay it out. I don't have the days memorized because it's so overlapping. That's why the statement of the case is very long in this case. But what it comes down to is, although the Petitioner, the Petitioner actually did go to the court, to the Federal District Court, prior to the day that even the earliest possible day that his Federal petition would have been due, absent any tolling, was in May of 2003. In April of 2003, he wrote a letter to the District Court trying to explain the great difficulty he was having in meeting his federal deadlines because he recognized that he was working against the clock. And he set out both the equitable reasons, his being deprived of access to his legal materials, as well as letting the court know the status of the couple of different state court proceedings that he had going. And the Federal District Court construed that as a habeas petition and ordered for him to amend it to include his claims. And he didn't have his claims ready yet, although he was diligently pursuing them. But he was, because his claims were based on five separate prior convictions in five separate superior courts in California, he was in the process and had been from even during the pendency of the case, the underlying judgment here, the Marin County case, that judgment issued in January of 2001, even during the pendency of that case, recognizing that he was going to get convicted, he was already diligently pursuing collateral relief about the prior convictions. And he had been sending letters to prior counsel. He had been sending letters to the courts. He had filed discovery motions. He was trying to obtain the information necessary to develop the claims that those underlying strike priors had, some of them, had been illegally imposed. And so when the district court in 2003, about a couple of weeks before his petition would have been due, sent him a letter saying we're construing this as your petition, amend to include your claims, he was unable to do so. He did, however, diligently keep the district court apprised of all of the efforts he was making to pursue his claims. Did the district court make any factual findings with respect to statutory tolling, as you've described it, or the periods when he was in protective admin state? The district court did not find that he was eligible for statutory tolling during those periods. I don't understand what the bottom line conclusion was. Did the district court make factual findings? No, it did not. Okay. With respect to either? No, it did not. All right. It merely found as a matter of law that he wasn't entitled to statutory tolling nor equitable tolling. And in this case, the issue with respect to equitable tolling is clearly present because there are both extraordinary circumstances to which his having been attacked and, therefore, not only was he did not have access to his legal files, but he was physically injured such that he spent several weeks in a hospital. He then spent several months without access to his files, and he continually tried to obtain that access. Is the relief you seek asking this Court to remand to district court to make factual findings about these periods of tolling? Or are you requesting that we determine that he, in fact, is eligible for equitable tolling and direct the district court to proceed on the merits? The relief I'm seeking is that the district court be directed to proceed on the merits, because the issues affecting equitable tolling are clear enough and the facts are developed enough to, and including the statutory tolling, actually, for this Court to make a decision on the record that he was entitled to it. The district court presumed that from the moment that Mr. Ramirez had access to his legal files, from the moment that he was, you know, reunited with these boxes of files, he immediately would have needed to file his Federal habeas petition. And that is because the district court refused to give statutory tolling to the earlier periods, and therefore, according to the district court, even if he were given equitable tolling, the moment that that State impediment ended and he was reunited with his files, he should have immediately filed a habeas petition. And that doesn't take into account our position that earlier he should have already had his statute tolled, and he should have had 139 days with which to file his Federal petition. Thank you. Have a minute. State at this time. Ms. Haley? Good morning. Juliet Haley, appearing for the appellee James Yates, Warden James Yates. I want to just first start with just some clarifications on the dates. I think that the Court had asked that Petitioner's case became final on May 21st, 2002. Therefore, it was due on May 21st, 2003. He didn't file a Federal petition until June 14th of 2004. He filed a letter, and the Court said, you have to file claims. And the U.S. Supreme Court, I don't think there's any dispute that filing a letter is not filing a petition. You need to have a petition with claims. He ignored the district court's request for months. So what we're talking about is from May 21st, 2003, until June 14th, 2004, that that's the amount of time he would need some form of statutory equitable tolling. With regards to the proffered basis for tolling, he makes an argument that he's entitled to statutory tolling in the sense that the statute did not commence, because he did have the overlap between finality and the first petition receiving notice. That amount of time is 73 days. Without even taking issue on whether he's adequately established that, if you give him the 73 days, it's not enough. If you look at the other basis for tolling, even if you start the statute on August 1st, when he says he got it, and you run it for another year, he's still more than a year late. His other basis for tolling, equitable tolling, is this period in which he was assaulted. The evidence in the record, the only evidence in the record, is that he was assaulted on February 26th, 2003. In his declaration, he says he did not receive his materials until July of, July 11th of 2003. And I cited that in the excerpts of record at page 155, his declaration. Counsel keeps saying October, and he says that in pleadings, but his declaration, which is the only evidence, I mean, obviously, he wouldn't say I got it when I didn't get it. That's the only evidence is July. That ---- Sotomayor, did the court make factual findings as to what you just described? In terms of was he, in fact, without his materials? No, because what the court said was even if we assume these things, which is part of the State's argument, 73 days, 135 days, that's 205 days, that meant that his federal habeas had to be filed by December 12th, 2003. And it wasn't filed until June of 2004. So the district court basically said even if, it doesn't get you there, but also he hasn't shown diligence because he had all of his legal materials for the first nine months or year, if you give him that first little statutory tolling bit, where he had all his legal materials to prepare his petitions, didn't do anything apparently, or I don't know. I mean, he didn't file a federal petition. And then he still had his materials when he received them back in July 11th, 2003. He'd been told by the district court, file, file, and he didn't do anything. He went ahead and just kept going into State court, filing discovery motions, and he did spend a lot of time attacking priors. But it was interesting. I was looking at this case. I actually handled the case in State court, which is rare at this point. But he made all these same complaints at trial, the legitimacy of his priors. That was the basis of his appeal. That was the basis of his collateral attack during the pendency of the appeal was on whether counsel was effective, whether he researched these things. So when you compare what he had when his case became final and what he filed in the district court, what was he doing? I mean, I looked at him, and the only thing else he's added was some jury claims, which, again, was something that happened at trial. So the district court, I think correctly, said that there was no showing of due diligence, and this was, even if you gave him some of these periods, you don't he's not timely. Any other questions? Thank you for your very concise counsel. It is true that he raised the same issues with respect to the legitimacy of his priors in his direct appeal of the Marin County judgment. That's the underlying judgment being challenged here. And as I indicated, part of the showing of due diligence here is even during the pendency of his trial on the case that he ultimately would be sentenced to 50 years to life. He was already writing letters to prior counsel. He was making requests of court records because he recognized the significance of those prior convictions. And there can be ñ I have seen few petitioners who showed the type of diligence that Mr. Ramirez has shown in the sense that he personally has never ceased, really, for a moment, to try to obtain records, do his own legal research. He has no education. And in order to properly file documents in courts, state courts, and then in the federal district court. I believe here that the equitable principle does require that he be permitted to have his petition considered on its merits. Thank you. Thank both of you. You were really well on the case. We really appreciate it. We know the work that goes into distilling everything down to the time you have for it. You both did an excellent job. Thank you very much.
judges: Hug, Fletcher B. , Hawkins